IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01795-PAB

GEORGIA D. WARD,

       Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.
_____

**ORDER**
_____

      This matter is before the Court on plaintiff Georgia D. Ward's complaint [Docket No. 1], filed on July 10, 2012.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I.  BACKGROUND

      On April 24, 2009, plaintiff filed for disability benefits under Title II and Title XVI. R. at 44.  Plaintiff alleged that she had been disabled since April 24, 2009.  *Id.*  After an initial administrative denial of her claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on January 19, 2011.  *Id.*  On March 1, 2011, the ALJ

_____

      [1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

issued a decision denying plaintiff's claim.  *Id.* at 55.  Plaintiff's appeal to the Appeals

Counsel was denied, *id.* at 56, and, on July 10, 2012, plaintiff commenced the present

case.  Docket No. 1.  On September 10, 2012, the Commissioner moved to remand the

case.  Docket No. 6.  On September 12, 2012, the case was remanded, Docket No. 7,

and, based upon receipt of additional evidence, the Appeals Counsel directed the ALJ

to consider plaintiff's claim de novo.  R. at 68-69.  On February 13, 2013, the ALJ held

a hearing and, on March 1, 2013, issued a decision.  R. at 14, 24.

The ALJ considered evidence from the time period after his 2011 decision and

found that the additional evidence did not alter his original 2011 finding that plaintiff was

not disabled.  R. at 23.  As a result, the ALJ found that plaintiff had the following severe

impairments: "anxiety disorder, affective disorder, obesity, disorders of the cervical

spine, carpal tunnel syndrome in the left upper extremity and fibromyalgia."  R. at 17.

The ALJ found that these impairments, alone or in combination, did not meet one of the

regulations' listed impairments, *id.*, and ruled that plaintiff had the residual functional

capacity ("RFC") to:

> [P]erform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)
> except that she requires a sit stand option; she can only occasionally bend,
> squat or kneel; she cannot perform overhead work and should not be
> exposed to unprotected heights; she can frequently perform manipulative
> functions such as handling or fingering with her non-dominant upper
> extremity; she cannot perform complex tasks, meaning she is limited to an
> SVP of 3 or less; and she should not interact with the general public.

R. at 19.  Based upon this RFC and in reliance on the testimony of the vocational

expert ("VE"), the ALJ concluded that plaintiff "has no past relevant work," but that

"there are jobs that exist in significant numbers in the national economy that the

claimant can perform."  R. at 23.

Pursuant to 20 C.F.R. §§ 404.984(a) and 416.1484, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

4

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  Plaintiff's Objections to the ALJ's Decision

#### 1.  Sit/Stand Option

The Court first turns to plaintiff's argument that the ALJ's imposition of a sit/stand

option in plaintiff's RFC is impermissibly vague and therefore "does not 'relate with

precision all of claimant's impairments.'"  Docket No. 18 at 18 (quoting *Hargis v.*

*Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)).  Plaintiff claims that, even if the

sit/stand option were interpreted to mean that plaintiff must have the option of sitting or

standing at will, the ALJ was required to further describe what he meant by the term.

*Id.*  The Commissioner responds that the sit/stand option contained within plaintiff's

RFC is "most reasonably interpreted as the option to sit or stand 'at-will.'"  Docket No.

19 at 23-24.  Plaintiff replies that light work jobs generally preclude employees from

sitting at will and that the record does not indicate that the VE in this case understood

that plaintiff's RFC required the ability to sit or stand at will.  Docket No. 24 at 3-4.

"The ALJ is only required to ask hypotheticals encompassing impairments that

find support in the record." *Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999).

"A hypothetical question must precisely describe a claimant's impairments so that the

vocational expert may accurately assess whether jobs exist for the claimant." *Newton*

*v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996).  Where, as here, "an ALJ finds that a

claimant cannot perform the full range of work in a particular exertional category, an

ALJ's description of his findings in his hypothetical . . . must be particularly precise."

*Vail v. Barnhart*, 84 F. App'x 1, at *4-*5 (10th Cir. 2003) (unpublished).  Thus,

"'testimony elicited by hypothetical questions that do not relate with precision all of a

claimant's impairments cannot constitute substantial evidence to support the

Secretary's decision.'"  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)

(quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)).  Courts in the Tenth

Circuit have found similarly vague sit/stand options insufficient.  *See, e.g.*, *Maynard v.*

*Astrue*, 276 F. App'x 726, 731 (10th Cir. 2007) (unpublished) (holding that, because

ALJ's hypothetical included undefined sit/stand opinion limitation, "the VE's response is

not a reliable basis for analyzing the erosion of the unskilled sedentary occupational

base or the total number of jobs Mr. Maynard can perform"); *Vail*, 84 F. App'x 1, at *4

("[t]he ALJ did not properly define how often Vail would need to change positions even

'as needed'"); *Waltemire v. Colvin*, 2014 WL 3809189, at *7 (D. Kan. Aug. 1, 2014)

("the ALJ erred when he merely asked the VE whether a 'sit/stand option' – without any

specifics – would affect the jobs identified as available in the national and local

economies [and] the VE's answer does not constitute substantial evidence to support

the ALJ's decision").

The ALJ presented the VE with the following hypothetical:

Assume an individual of the same age and educational background as the claimant, limited to an exertional level of full range of light [work] with non-exertional limitations of a sit/stand option.  Allow for occasional bending, squatting or kneeling, no overhead work, no unprotected heights.  Allow for frequent but not constant handling and fingering with the non-dominant upper extremity.  No complex tasks, defined [as] an SVP 3 or less, and no dealing with the general public.

R. at 162.  The ALJ did not provide any additional explanation of what he meant by a sit/stand option and the VE did not ask for further clarification.  *See id.* at 162-64. Nonetheless, the VE identified as compatible with the hypothetical the jobs of "investigator, dealer accounts," which appears in the Dictionary of Occupational Titles ("DOT") as number 241.367-038, "electronics worker," which appears in the DOT as number 726.687-010, and "surveillance-system monitor," which appears in the DOT as number 379.367-010.  *Id.* at 162.

Because plaintiff's RFC departed from the exertional category of light work,[2]  the ALJ's failure to further define the parameters of the sit/stand option limitation calls into question whether the VE's testimony was consistent with plaintiff's RFC.  *See Vail*, 84 F. App'x 1, at *4 ("Precisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work." (citing 20 C.F.R. § 404.1567(b)).  As a result, because the ALJ's step-five determination rested primarily on the VE's testimony, the Court cannot conclude that the ALJ's step-five determination was based upon substantial evidence.  *See Maynard*, 276 F. App'x at 731.

---

[2]Although plaintiff cites SSR 96-9p, 1996 WL 374185 (July 2, 1996) in support of her argument, SSR 96-9p applies, unlike here, in cases "where the claimant is limited to less than a full range of *sedentary work*."  *Vititoe v. Colvin*, 549 F. App'x 723, 731 (10th Cir. 2013).

To the extent the Commissioner argues that the RFC's sit/stand option should be interpreted as limiting plaintiff to those jobs that permit sitting or standing "at will," the Court disagrees.  The fact that the ALJ did not otherwise limit the sit/stand option may implicitly suggest that the ALJ determined that plaintiff must have the opportunity to change positions at will.  However, the record contains no basis upon which to conclude that the VE interpreted the ALJ's hypothetical in the manner that the Commissioner suggests.  *See* R. at 162-64.  Thus, the Court has no basis upon which to reasonably conclude that the VE interpreted the ALJ's hypothetical as limiting plaintiff to jobs permitting sitting or standing at will.  *Cf. Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 792 (10th Cir. 2013) (unpublished) (explaining that ALJ's vague hypothetical was corrected when claimant's attorney "asked the VE whether she understood the hypothetical to mean that the 'sit/stand option [was] at will,' and the VE answered[,] 'Yes'").

The Court cannot conclude that the ALJ's error was harmless.  The VE testified that all three identified jobs were performed in a manner generally compatible with their descriptions in the Dictionary of Occupational Titles.  R. at 162-63.  However, the descriptions of the three identified jobs do not definitively suggest that plaintiff, if she required the ability to sit or stand at will, could hold such jobs for a significant period of time.  For example, the description of surveillance system monitor suggests that the job is largely sedentary, *DOT*, 379.367-010, whereas the description of investigator, dealer accounts suggests that the job requires locating "merchandise in areas, such as showroom, storage room, or car lot."  *DOT*, 241.367-038.  Absent testimony by the VE, the Court cannot definitively conclude that the three identified jobs are consistent with

8

an at-will sit/stand option. *See Winfrey v. Chater*, 92 F.3d 1017, 1025-26 (10th Cir. 1996) ("substantial gainful activity . . . requires a determination that the claimant can *hold* whatever job he finds for a significant period of time"); *Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628 (9th Cir. 2011) (unpublished) ("The vocational expert in this case found that the recommended jobs would allow for an at-will sit-stand option.").

The Court will remand the case to enable the ALJ to further define the parameters of the sit/stand option in plaintiff's RFC and, if necessary, provide the VE with a complete hypothetical.

### 2. Medical Source Opinions

Plaintiff challenges (1) the ALJ's treatment of the opinions of Dr. Robert Tonsing, plaintiff's treating psychiatrist in 2012, (2) the weight the ALJ assigned to various other medical source opinions, and (3) the ALJ's rejection of the opinion of Susan Stiller, a licensed clinical social worker.

A treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The Tenth Circuit has articulated a two-step test for determining whether the opinion of a treating source is entitled to controlling weight:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96–2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator."  SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996).  The level of deference accorded a non-controlling opinion of a treating physician depends on a number of factors, including the length of the treating relationship, the nature and extent of the relationship, the supportability of the opinion and its consistency with the record as a whole, and the physician's medical specialization.  20 C.F.R. § 404.1527(c)(2)-(6). An ALJ need not expressly discuss the application of each factor to each medical opinion, so long as the ALJ's opinion is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citations omitted).  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citations omitted).

Due to the lack of a treating relationship between plaintiffs and non-treating physicians, the opinions of such physicians "are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."  SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).  "[B]ecause nonexamining sources have no examining or treating relationship with [claimants], the weight [an ALJ] will give their opinions will depend on the degree to

10

which they provide supporting explanations for their opinions" and "the degree to which these opinions consider all of the pertinent evidence in [a] claim, including opinions of treating and other examining sources."  20 C.F.R. § 404.1527(c)(3).

Omitting a sufficiently thorough explanation for the weight given to the opinion of a treating physician (if given less than controlling weight) or for the weight given the opinion of a nonexamining physician is grounds for remand.  *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (remanding denial of benefits because ALJ improperly rejected the treating physician's opinion and relied instead on the findings of a non-treating physician, which the court found to be "of suspect reliability"); *Andersen v. Astrue*, 319 F. App'x 712, 728 (10th Cir. 2009) (unpublished) (remanding denial of benefits where ALJ failed to indicate weight accorded to treating physician's opinion and failed to supply "good reasons" for according opinion that weight).  Similarly, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical . . . consultant."  20 C.F.R. § 416.927(e)(2)(ii).

### a.  Mental Limitations

The Court first turns to the opinions in this case concerning plaintiff's mental limitations.  Plaintiff argues that the ALJ failed to apply the proper framework in evaluating Dr. Tonsing's opinion.  Docket No. 18 at 12-13;  Docket No. 24 at 5.  The record indicates that Dr. Tonsing saw plaintiff on April 23, May 25, July 31, August 27, and October 11, 2012.  R. at 831-35.  Each visit was a "fifteen minute med check" and Dr. Tonsing's notes indicate that he diagnosed plaintiff with "Major Depression,

recurrent with [post-traumatic stress disorder]" ("PTSD").  *Id.*  The subjective portion of

Dr. Tonsing's April 23 note states that plaintiff was hospitalized for suicidal thinking and

has a history of PTSD and is "still having some harassment at home."  R. at 835.  Dr.

Tonsing's objective findings state, "The patient was calm and non-tearful.  She denied

suicidal thoughts or side effects.  She was hoping to get disability."  *Id.*  The subjective

portion of Dr. Tonsing's May 25 note states that plaintiff reported "hyper startle and re-

experiencing," was "fearful that she would be approached by the perpetrator," and had

been "denied disability once again after four years."  R. at 834.  Dr. Tonsing's objective

findings state that plaintiff was non-tearful and that Dr. Tonsing and plaintiff discussed

finding other coping skills and changing medication.  *Id.*  On July 31, plaintiff reported to

Dr. Tonsing that she had recently been the victim of a home invasion and sexual

assault, but denied suicidal or homicidal thinking.  R. at 833.  Dr. Tonsing's objective

findings state that plaintiff was calm and non-tearful and denied "acute suicidal,

homicidal or overt hallucinations."  *Id.*  Dr. Tonsing altered plaintiff's prescription,

directed plaintiff to pursue labs, medical evaluations, and to continue counseling with

Ms. Stiller.  *Id.*  On August 27, 2012, plaintiff reported to Dr. Tonsing that she was still

experiencing trauma related to her recent assault and had been staying with her sister.

R. at 832.  Dr. Tonsing's objective findings state that plaintiff denied any actual

hallucinations, suicidal, or homicidal thoughts.  *Id.*  The subjective portion of Dr.

Tonsing's October 11 note states that plaintiff

> was upset and said they were accusing her of being schizophrenic or
> Multiple Personality Disorder.  She claimed that they were real events
> although they were not able to find evidence.  She says she couldn't
> remember how people looked and would blank out at the time of these

incidents.  We talked about the possibility of some Post-Traumatic Stress re-experiencing given her early history of sexual abuse by father and physical abuse by mother and sexual abuse by first husband as well as a previous rape.  She was trying to deal with this now by not staying at the house ever by herself or going to her sister Debbie's house when her husband was not there.  They were also once again planning to move. She felt her husband was supportive and she once again denied any hallucinations.  . . . She would occasionally have nightmares of the rape but did not say that was a regular occasion.

R. at 831.[3]  Dr. Tonsing's objective findings state, "Diane was calm and alert and non-tearful.  She was matter-of-fact.  She was expecting to get an MS evaluation at the University sometime.  She said she was compliant with her medications and denied any suicidal, homicidal or overt psychotic symptoms." *Id.*

On December 3, 2012, Dr. Tonsing completed a Mental Impairment Questionnaire.  R. at 1057.  Dr. Tonsing indicated that plaintiff had a current Global Assessment Functioning ("GAF")[4] score of 35, but had a GAF score as high at 50 within the past year.  *Id.*  Clinical findings indicated that plaintiff was tearful, suicidal at times, had regular nightmares, and social anxiety.  *Id.*  Dr. Tonsing indicated that plaintiff's condition was "<u>chronic</u> given 6 yr history."  *Id.* (emphasis in original).  Dr. Tonsing

---

[3]Plaintiff appears to reference an incident that took place on September 7, 2012, where police were called to plaintiff's home after plaintiff reported a home invasion. *See* R. at 297-98.

[4]The GAF "is a subjective determination based on a scale of 1-100 of 'the clinician's judgment of the individual's overall level of functioning.'" *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quoting *DSMV-IV* at 32).  A GAF score of 41-50 corresponds to "'serious symptoms . . . OR any serious impairment in social, occupational or school functioning . . . .'" *Keyes-Zachary v.* Astrue, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (quoting *DSMV-IV-TR* at 34).  A GAF score of 31-40 corresponds to "'[s]ome impairment in reality testing or communication . . . OR major impairment is several areas such as work or school . . . .'" *Id.* (quoting *DSMV-IV-TR* at 34).

checked boxes indicating that plaintiff suffered from several signs and symptoms, including persistent anxiety, difficulty thinking or concentrating, recurrent recollections of a traumatic experience, and sleep disturbance. R. at 1058. With respect to plaintiff's ability to do unskilled work, Dr. Tonsing checked boxes indicating that plaintiff was unable to meet competitive standards with respect to maintaining attention for two hour segments, sustaining an ordinary routine, working with others, completing a normal workday and workweek, performing at a consistent pace, getting along with co-workers, and dealing with normal work stress. R. at 1059. However, Dr. Tonsing checked boxes indicating that plaintiff was "[l]imited but satisfactory" or "[s]eriously limited, but not precluded" with respect to her ability to understand, remember, and follow instructions, maintain regular attendance, make work-related decisions, ask simple question, and accept instructions or respond to criticism. *Id.* Dr. Tonsing wrote that plaintiff was anxious, fearful, depressed, unable to concentrate, deal with normal work stress, and suffered flashbacks of past assaults. *Id.* Dr. Tonsing checked boxes indicating that plaintiff suffered extreme difficulties in maintaining social functioning, marked difficulties in maintaining concentration, and had four or more episodes of decomposition, lasting for at least two weeks, within a 12 month period. R. at 1061. Dr. Tonsing checked a box indicating that plaintiff's condition would force her to be absent from work more than four days per month. R. at 1062.

The ALJ discussed Dr. Tonsing's notes and mental impairment questionnaire. R. at 21-22. The ALJ stated of the questionnaire,

> [s]ince the majority of Dr. Tonsing's findings are not represented in his notes from his short visits with the claimant and he only began treating her in April of 2012, the undersigned suspects his opinions are based primarily on the

claimant's self-reports and possibly the records from Parkview Hospital which show the same GAF scores during her April 2012 exacerbation. However, the undersigned finds that the totality of the evidence, old and new, is contrary to his extreme findings and the severity he suggests for her mental functioning. In addition, his opinions are not supported by his own treatment notes, clinical findings or observations. Neither are they consistent with treatment notes of others. In addition, the limits he ascribes are not compatible with an overall GAF score of 50 and no weight is given to his contention that claimant's conditions have existed since September 10, 2006 since he was not treating the claimant at that time. Therefore, his opinion is given little weight.

*Id.*

One issue is whether the ALJ erred in declining to give Dr. Tonsing's opinions in the questionnaire controlling weight. Dr. Tonsing did not explain the basis for arriving at the limitations indicated in the questionnaire, what additional medical records he relied upon, and what clinical techniques he used in reaching his conclusions. For example, Dr. Tonsing's notes do not indicate that he evaluated plaintiff's GAF score while treating plaintiff and Dr. Tonsing did not otherwise explain the origin of the listed GAF score. Moreover, Dr. Tonsing's treatment notes themselves do not indicate whether he discussed with plaintiff the effects that her symptoms may have on her ability to work. Thus, there is substantial evidence supporting the ALJ's conclusion that Dr. Tonsing's opinions are unsupported.[5]

However, although the ALJ appears to have concluded that Dr. Tonsing's

---

[5]Plaintiff argues that the ALJ's rejection of Dr. Tonsing's opinion was primarily based upon the ALJ's personal suspicions concerning the basis of Dr. Tonsing's opinion, suspicions which plaintiff argues do not constitute substantial evidence. Docket No. 18 at 12. However, it appears that because Dr. Tonsing failed to explain the basis of his opinion, the ALJ determined his opinion unsupported and was left to speculate as to the basis of Dr. Tonsing's conclusions and suggested limitations. Plaintiff's argument on this point is therefore rejected.

opinion is inconsistent and unsupported, his decision does not make clear that he "examine[d] the other physicians' reports to see if they outweigh the treating physician's report." *See Hamlin*, 365 F.3d at 1215.  For example, in his 2011 decision, the ALJ gave great weight to the opinion of State agency reviewing psychologist MaryAnn Wharry, R. at 53, but the ALJ's 2013 decision does not mention Dr. Wharry's opinion. Thus, the ALJ's 2013 decision leaves open the possibility that the ALJ may have impermissibly examined Dr. Tonsing's opinion to see if it outweighed Dr. Wharry's and other opinions discussed in the ALJ's 2011 decision.[6]  By determining that Dr. Tonsing's findings were inconsistent with treatment notes and entitled to little weight, the ALJ implicitly elevated Dr. Wharry's opinion over Dr. Tonsing's opinion.  Nonetheless, the Court cannot provide a post hoc rationale for the ALJ's conclusions.  *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (holding that support for ALJ's decision must be "apparent from the ALJ's decision itself).  The ALJ's 2013 decision does not allow the Court to determine whether, as the Tenth Circuit requires, the ALJ re-examined Dr. Wharry's report to determine if it outweighed Dr. Tonsing's opinion, "not the other way around." *See Hamlin*, 365 F.3d at 1215.  The ALJ can resolve this uncertainty on remand.[7]

---

[6]Moreover, the Court notes that Dr. Wharry's findings are expressed in a check-box evaluation form, R. at 362-78, which, when completed by an agency physician without examination, does not constitute substantial evidence under some circumstances.  *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

[7]Plaintiff argues that the ALJ erred in finding that the limitations Dr. Tonsing proposed were inconsistent with an overall GAF of 50.  R. at 22.  Plaintiff argues that this suggests that the ALJ was impermissibly substituting his medical judgment for that of a treating doctor.  Docket No. 24 at 6.  However, the ALJ appears to have been pointing out an internal inconsistency in Dr. Tonsing's opinion, not, as plaintiff suggests,

The Court also notes that, when forming her opinion dated October 9, 2009, R. at 362, Dr. Wharry did not have the benefit of reviewing Dr. Tonsing's notes or opinions, Ms. Stiller's more recent treatment notes, or any other records from what the ALJ refers to as plaintiff's "April 2012 exacerbation."  R. at 22.  Thus, it is not apparent from the ALJ's decision that he considered the degree to which Dr. Wharry and other non-treating sources "consider[ed] all of the pertinent evidence . . . , including opinions of treating and other examining sources."  *See* 20 C.F.R. § 404.1527(c)(3); *Daniell v. Astrue*, 384 F. App'x 798, 803 (10th Cir. 2010) (unpublished) (criticizing ALJ's decision to elevate non-examining source over treating physicians' opinions, in part, because medical consultant did not include review of any medical records or assessments provided by treating physicians).  The ALJ's decision attempts to address this deficiency by concluding that the April 2012 increase in plaintiff's depressive symptoms was "not durational" and a "temporary exacerbation of her mental condition."  R. at 22.  However, Dr. Tonsing and Ms. Stiller appear to be the only two medical sources who evaluated plaintiff's mental limitations in 2012  and the ALJ assigned their opinions little weight.  Thus, the ALJ's decision does not identify the basis of the ALJ's conclusion that plaintiff's 2012 depressive symptoms were a non-durational, temporary exacerbation.  *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) ("the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray, by determining that the results of the MMPI-2 test were not an adequate basis

---

opining that Dr. Tonsing should have assigned plaintiff a lower GAF score. Nonetheless, because the ALJ will reevaluate Dr. Tonsing's opinion on remand, the Court does not resolve this argument or reach the question of whether the ALJ properly applied the appropriate factors.  *See Watkins*, 350 F.3d at 1297.

on which to make a diagnosis").  This issue can also be addressed on remand to the extent necessary.

The Court will not address the ALJ's assessment of other medical opinions evaluating plaintiff's mental limitations because the ALJ's analysis on remand may impact how the other opinions in the record are viewed.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").[8]

### b.  Physical Limitations

Plaintiff challenges the ALJ's rejection of the report of consultative examiner Dr. Velma Campbell in favor of the opinion of State agency physician Dr. Kent Kreider. Docket No. 18 at 14.

On August 20, 2009, Dr. Campbell examined plaintiff.  R. at 354.  Dr. Campbell appears to have spoken with plaintiff about her physical and mental conditions and conducted a physical examination.  R. at 354-56.  Dr. Campbell diagnosed plaintiff with chronic myofascial pain, left arm regional sympathetic dystrophy, left wrist weakness, left shoulder impingement, irritable bladder syndrome, chronic depression, and severe obesity.  R. at 356.  In addition to opining as to plaintiff's limitations on standing, walking, sitting, lifting, and carrying, Dr. Campbell found that plaintiff's "myofascial syndrome associated with psychological factors would reduce overall tolerance to

---

[8]On remand, the ALJ may also wish to consider the import of Ms. Stiller's post-hearing letter, R. at 7, where Ms. Stiller provides an interpretation of her examination notes.  *See* R. at 7.

activity to less than 6 hours a day." *Id.*  Dr. Campbell stated that she there was "no

indication of cognitive dysfunction, but the psychological conditions could affect

concentration, focus, and processing of complex situations." *Id.*

> The ALJ assigned
>
> partial weight to Dr. Campbell's opinion as it is consistent with the overall
> medical record and she did examine the claimant.    However, the
> undersigned gives no weight to the limitations she ascribed to the claimant's
> mental issues as she has no expertise in the area of mental health and did
> not perform or rely upon any objective evidence to support related limitations.
> Given that she limited the claimant to less than an eight hour day due in part
> to her assessment of the claimant's mental health, the undersigned is
> persuaded, that aside from any mental issues, the claimant could perform a
> full eight hour work day based on her physical abilities.

R. at 51.

On December 10, 2009, Dr. Kreider completed a Physical Residual Functional

Capacity Assessment form.  R. at 381-88.  Dr. Kreider's findings indicate that he had

access to medical records from plaintiff's 2008 and 2009 visits to physicians as well as

Dr. Campbell's findings.  R. at 383, 387.  Dr. Kreider gave some weight to Dr.

Campbell's findings, but concluded that plaintiff "should be able to work 8 hours/day as

basically this is a sedentary RFC."  R. at 387.

The ALJ explained that, although Dr. Kreider did not examine plaintiff, he had

access to plaintiff's medical records and his opinions were consistent with the

evaluations, objective findings, and treatment notes of plaintiff's medical providers.  R.

at 52.  The ALJ assigned Dr. Kreider's opinions great weight.  *Id.*

Plaintiff first appears to argue that the ALJ entirely rejected Dr. Campbell's

opinion.  Docket No. 18 at 14.  Plaintiff's argument is unsupported.  The ALJ assigned

partial weight to Dr. Campbell's opinion.  With the exception of Dr. Campbell opinion

that plaintiff could not complete an 8 hour workday, plaintiff identifies no aspect of

plaintiff's RFC that is wholly inconsistent with Dr. Campbell's findings.  To the contrary,

Dr. Campbell's findings appear to be consistent with the ALJ's RFC findings in several

respects.  *Compare* R. at 356, *with* R. at 48, *and* 20 C.F.R. § 404.1567(b).  Plaintiff also

argues that Dr. Kreider did not explain why his RFC differed from Dr. Campbell's.

Docket No. 18 at 14.  However, Dr. Campbell's and Dr. Kreider's opinions appear to be

consistent with one another in several respects.  For example, Dr. Kreider found that

plaintiff could only occasionally, stoop, kneel, crouch, or crawl, R. at 383, whereas Dr.

Campbell concluded that plaintiff's postural activities should be limited to less than four

hours per day.  R. at 356.  Moreover, with respect to standing and walking, Dr. Kreider

proposed a stricter limitation than Dr. Campbell.  Dr. Campbell concluded that plaintiff

was limited to "about 4 hours a day," R. at 356, whereas Dr. Kreider determined that

plaintiff was limited to two hours a day "due to frequent falls."  R. at 382.[9]  Thus,

plaintiff's arguments fail.

Plaintiff's primary challenge to the ALJ's treatment of Dr. Campbell's and Dr.

Kreider's opinions is the ALJ's failure to adopt Dr. Campbell's opinion that plaintiff was

limited to 6 hours of activities per day.  Docket No. 18 at 15.  Plaintiff argues that the

ALJ's finding that Dr. Campbell "has no expertise in the area of mental health" has no

support in the record and that physicians are permitted to opine on mental health

---

[9]Plaintiff argues that the ALJ implicitly rejected this portion of Dr. Kreider's
opinion by failing to include this limitation in plaintiff's RFC.  Docket No. 18 at 15.  The
Commissioner responds that, by providing plaintiff with a sit/stand option, the ALJ's
RFC is consistent with Dr. Kreider's opinion.  Docket No. 19 at 22.  As noted above, the
parameters of plaintiff's sit/stand option are unclear from the ALJ's decision.  Thus, the
Court finds that this issue is best addressed on remand.

issues.  *Id.*  Plaintiff's interpretation of the ALJ's decision is too narrow.  The ALJ

declined to adopt Dr. Campbell's opinion that plaintiff was limited to six hours of activity

per day because the opinion was based in part on Dr. Campbell's assessment of

plaintiff's mental condition, which the ALJ found to be unsupported by either Dr.

Campbell's qualifications or objective clinical findings.  R. at 51.  Dr. Campbell is board

certified in occupational medicine and family practice, R. at 356, but the record contains

no evidence that she has specialized knowledge regarding mental health.  But even if

Dr. Campbell is permitted to offer opinions related to plaintiff's mental capacity, *see,*

*e.g.*, *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), the Court cannot

conclude that the ALJ acted improperly in giving no weight to Dr. Campbell's opinions

concerning plaintiff's mental limitations.  Although Dr. Campbell appears to have taken

plaintiff's history and conducted a physical examination, Dr. Campbell's report contains

no indication that Dr. Campbell conducted a psychiatric evaluation or took any other

clinical steps to arrive at her conclusion.  Thus, Dr. Campbell's opinions concerning

plaintiff's mental limitations do not appear to be based on clinical or objective

evaluations of plaintiff's mental condition.  *See Palmer v. Dep't of Health & Human*

*Servs*, 50 F. App'x 957, 962 (10th Cir. 2002) (citing *Sprague*, 812 F.2d at 1232)

(affirming ALJ's decision to elevate mental capacity opinions of psychiatrists over

opinion of treating "board-certified family practitioner" who did not appear to have

"treated plaintiff for her mental impairments").  The ALJ's finding that Dr. Campbell's

assessment of plaintiff's mental issues was unsupported is not "overwhelmed by other

evidence in the record or [a] mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992).  As a result, the Court cannot conclude that the ALJ erred in

declining to adopt Dr. Campbell's opinion that plaintiff's activity should be limited to less

than six hours per day.

### 3.  Age Classification

Plaintiff argues that, because she turned age 50 after the ALJ's 2013 decision

was issued, her age classification changed such that, if she was found limited to

sedentary work, the Commissioner would be required to find her disabled.  Docket No.

18 at 19 (citing 20 C.F.R. pt. 404, subpt. P, app. 2).

> Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains.

20 C.F.R. pt. 404, subpt. P, app. 2(g).  The Commissioner correctly notes that, because

the ALJ found that plaintiff could perform light work with some limitations, the Medical-

Vocational Guidelines for sedentary work do not appear to apply.  Docket No. 19 at 24.

Nonetheless, on remand the ALJ may wish to consider plaintiff's age, impairments, and

work experience as it relates to plaintiff's ability to work.  See § 404.1563(d).[10]

---

[10]Although the Commissioner's response brief defends the ALJ's credibility determination, Docket No. 19 at 13, the ALJ's credibility determination was not an issue explicitly raised in plaintiff's opening brief, except to the extent the ALJ's determination was based upon his interpretation of Ms. Stiller's notes. See Docket No. 18 at 1, 17. Plaintiff argues, for the first time in her reply brief, that the ALJ failed to consider evidence provided by plaintiff's family members concerning her daily activities.  Docket No. 24 at 9.  To the extent the ALJ's credibility determination is premised on his interpretation of Ms. Stiller's opinions and treatment notes, the ALJ may wish to revisit the issue on remand.  However, the Court will not reach this or any "remaining issues raised by [plaintiff] because they may be affected by the ALJ's treatment of this case on remand."  See Watkins, 350 F.3d at 1299.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner to deny disability benefits to

plaintiff is **REVERSED** and **REMANDED** for additional proceedings consistent with this

opinion.

DATED March 5, 2015.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge